**Sheldon F. SACKETT,**
Appellant,

v.

**P. B. WHITE, Trustee in Bankruptcy of Portsmouth Newspapers, Incorporated, Appellee.**

No. 7662.

United States Court of Appeals
Fourth Circuit.

Argued June 16, 1958.

Decided June 18, 1958.

Robert Cantor, Richmond, Va. (Eddie Cantor, and Cantor, McMullan & Cantor, Richmond, Va., on brief), for appellant.

William C. Worthington, Norfolk, Va., for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and PAUL, District Judge.

HAYNSWORTH, Circuit Judge.

Portsmouth Newspapers, Incorporated, the publisher of a newspaper in Portsmouth, Virginia, became insolvent and made a general assignment for the benefit of creditors. The trustees under the assignment made rather elaborate preparations to sell the tangible personal property of the assignor at an auction sale which had been widely advertised for May 11, 1957. Shortly prior to the date of sale, however, an involuntary petition in bankruptcy was filed and the matter was generally referred to the Referee. On the next day, the District Court appointed a receiver of the bankrupt estate and authorized him to proceed with the auction sale. The pertinent portion of the order of the District Judge, dated May 10, 1957, is as follows:

"It further appearing to the Court that considerable sums of money have been expended in advertising, cataloging, tagging and displaying the assets of the debtor preparatory to a sale presently scheduled for May 11, 1957, and for other cogent reasons shown, the Receiver is hereby Ordered to proceed to offer for sale to the highest bidder, either by parcel or by lot, at public auction on May 11, 1957, all the physical assets and personal property; such sale to be subject to the final approval of the Bankruptcy Court and also subject to such upset bid as may be made in conformity with such terms and conditions as the Bankruptcy Court shall hereafter determine. A cash deposit of twenty-five per cent (25%) shall be required of the successful bidder, which deposit, along with the assets, shall be held by the Receiver until the further order of the Court."

Accordingly, the tangible personal property of the bankrupt was offered for sale at the time and place scheduled, and all of it was tentatively sold, except some lead upon which no bid was received, for an aggregate price of approximately $83,000.00.

On May 22, 1957, the Referee held a hearing to consider acceptance of the bids made at the auction sale. The appellant, Sheldon F. Sackett, with his attorney, appeared at the hearing as a prospective purchaser prepared to enter an upset bid as contemplated in the order of the District Judge of May 10, 1957. Another prospective purchaser, one Ben Shulman, with his attorney, was also present. The two prospective purchasers proposed that they openly bid against each other, but the Referee insisted that each submit a sealed bid. Thereupon Sackett and Shulman submitted sealed bids, Shulman's being in the amount of $104,000.00, while Sackett bid $125,100.00. Sackett's bid was in the following language:

"I am herewith offering as an upset bid the sum of $125,100.00 for all of the assets of the Portsmouth Times, located at 1525 High Street, Portsmouth, Virginia with the exception of its accounts receivable.

"I am herewith attaching my check in the sum of $33,000.00 as a deposit and the balance is to be paid July 1, 1957."

On the following day, May 23, 1957, the Referee entered an order, the pertinent portion of which is as follows:

"Ordered that the sale at public auction be not confirmed, and the

up-set bid of Sheldon F. Sackett, in the sum of $125,100.00, for all of the assets except the accounts receivable, be accepted and confirmed."

The order of the Referee dated May 23, 1957, provided that the date of settlement would be July 1, 1957. On that date Sackett delivered two checks, which together covered the balance of the purchase price of $125,100.00. One of Sackett's checks was returned unpaid [1] and, thereafter, in further conferences before the Referee, Sackett claimed credit for, and demanded delivery of, some $19,000.00, which was the net balance of collections by the trustees, under the deed of assignment, over their expenses of administration and payments by them upon income tax, and other preferred, obligations. Their total collections were approximately $40,000.00, of which over $26,000.00 were collections upon accounts receivable, some $11,000.00 was the net balance of an escrow account maintained to secure the claims of the Associated Press, and there were other small miscellaneous cash accounts and special deposits.

Sackett claims that all disbursements by the trustees under the deed of assignment should be charged to their collections of accounts receivable for, though all of their collections went into one unsegregated account, their collections of accounts receivable were first in time and their disbursements, or a majority of them, preceded their collection of the escrow and other miscellaneous cash accounts. If we should thus trace funds into and out of the accounts of the trustees, there was an excess of collections on accounts receivable over the total of all disbursements of approximately $6,800.00, which on May 22, 1957, when the sale to Sackett was confirmed, was represented by cash in the hands of the Receiver.

Sackett thus contends that his offer to purchase "all assets * * * with exception of its accounts receivable" includes the cash items on hand on May 22, 1957, and that the confirmatory order of the Referee created a binding and unequivocal contract under which he is entitled to these cash items. On the theory that the contract was not unequivocal, the District Court received extraneous evidence of the intention of the parties, including the testimony of the attorney who represented Sackett until sometime after May 23, 1957, all of which tended to indicate that the parties intended to purchase and sell only the tangible personal property of the bankrupt. Though the hearing was postponed in order to permit Mr. Sackett to testify, if he chose to do so, he did not avail himself of this opportunity. Thereafter, the District Judge filed an opinion and entered an order in which he held that Sackett was not entitled to the disputed cash items and had been properly required by the Referee to complete his payment in the amount of $125,100.00 against delivery to him of the tangible personal property of the bankrupt. Sackett has brought the matter here.

■■ We think it clear that the contract by the parties is not to be found alone in the offer which Mr. Sackett submitted in writing on May 22, 1957, and the confirmatory order of the Referee entered on May 23, 1957, but that the contract incorporates also the terms of the previous order of the District Court authorizing the sale of "the physical assets and personal property" of the bankrupt, subject to the subsequent receipt of upset bids. Sackett had a representative at the auction sale who actively participated in the bidding, and Sackett, himself, attended the hearing on May 22, 1957, which the Referee had scheduled to consider acceptance and confirmation of the auction bids. Apparently he came to that hearing prepared with his written offer, which was dated May 21, 1957, in

---

1. The check bore a notation indicating its return was for the reason that there were insufficient funds for its payment. The Court is informed that Sackett has

filed suit against the bank contending that the bank's return of the check was improper.

which he described his offer as an "upset bid." Thus the Receiver and the Referee, not unreasonably, might have concluded that Sackett's written offer was submitted pursuant to the terms of the order of the District Court authorizing the auction sale and the subsequent receipt of upset bids. Certainly, Sackett's designation of his offer as an upset bid abundantly justifies reference to the preceding order of the District Court, under which the upset bid was submitted, for a more particular description of the assets to be sold.

The order of the District Court of May 10, 1957, authorizes the sale of "all the physical assets and personal property" of the bankrupt. Of course, cash in bank, accounts receivable and other choses in action are personal property, but the language of the order is susceptible of a construction that the term "personal property," as used therein, was intended only to exclude real estate rather than to include cash items and choses in action in the contemplated auction sale. The bankrupt owned no real estate in fee, but it did have a leasehold estate and a substantial interest in leasehold improvements which were not offered for sale at the auction, and there is nothing to suggest that they were ever intended to be. Indeed, while Sackett now claims, under the terms of his offer, to purchase all "assets" except accounts receivable, he apparently does not claim the leasehold estate or the leasehold improvements. Moreover, the order of May 10, 1957, itself, refers to extensive preparations for the auction sale, the "advertising, cataloging, tagging and displaying the assets of the debtor," and the sole reason for entry of the order was to provide authorization for the conduct of the auction sale as advertised by the trustees under the earlier voluntary assignment. What meaning the words "personal property" might have in another context, the order of May 10, 1957, construed as a whole, may not unreasonably be limited to the sale of tangible personal property.

We think that the several written instruments, which together constitute the contract between the parties, require construction, that they are susceptible of the interpretation placed upon them by the District Court and that extraneous evidence was properly received to establish the fact that the true intention of the parties conformed with the permissible interpretation of the written language.

Affirmed.